UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PUBLIX SUPER MARKETS, INC.,

                Plaintiff,

v.                                           Case No. 8:19-cv-545-T-27AEP

PATRICIA FIGAREAU, *et al.*,

                Defendants.

_____/

## REPORT AND RECOMMENDATION

      Plaintiff Publix Super Markets, Inc. ("Publix") initiated this action as Plan Sponsor and Plan Administrator of the Group Health Benefit Plan (the "Plan"), pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(3), and to 28 U.S.C. § 2201, against Defendants Patricia Figareau ("Figareau") and Frantz Paul ("Paul"), individually and on behalf of L.P. ("L.P."), a minor; Maria D. Tejedor ("Tejedor"); and Diez-Arguelles & Tejedor, P.A. (the "Firm").[1]  Essentially, Publix seeks to remedy violations of an employee welfare benefit plan established and maintained by Publix for the purpose of providing medical expense benefits to eligible Publix employees and their eligible dependents. By the instant motion, Publix seeks entry of a preliminary injunction (Doc. 13), which Defendants oppose (Doc. 25).  For the following reasons, it is recommended that Publix's Motion for Preliminary Injunction (Doc. 13) be granted.

---

[1] For ease of reference, unless referred to individually, Tejedor and the Firm shall be referred to collectively as the "Attorney Defendants" and all defendants shall collectively be referred to as "Defendants."

## I.      Background

Figareau and Paul are the natural parents of L.P., who is a minor child.[2]  Paul works for Publix, and he and his eligible family members, including L.P., remain enrolled in the Plan. Publix operates as Plan Sponsor and Plan Administrator for the Plan, which functions as a self-funded employee welfare benefit plan, as opposed to a plan insured through the purchase of a health insurance policy from a commercial carrier, within the meaning of ERISA.

Following a brachial plexus injury sustained at L.P.'s birth, Figareau and Paul initiated a medical malpractice action, entitled *Armondo R. Payas, Guardian ad Litem for L.P., a minor, Patricia Figareau and Frantz Paul, individually and on behalf of L.P., a minor v. Bond & Steele Clinic, P.A., d/b/a The Bond Clinic and Vincent Gatto, M.D. and Jennifer Salamon, M.D.*, Case No. 53-2011CA-006192-0000-LK, in the Tenth Judicial Circuit, in and for Polk County, Florida (the "Medical Malpractice Action").  The Attorney Defendants represented Figareau, Paul, and L.P. in the Medical Malpractice Action.  Prior to the conclusion of the Medical Malpractice Action, the Plan paid $88,846.39 in medical expense benefits to or on behalf of L.P. in connection with the brachial plexus injury suffered at L.P.'s birth.  Subsequently, the Attorney Defendants obtained a settlement in the Medical Malpractice Action in 2018, which resulted in a fund that exceeded the value of the Plan's $88,846.39 reimbursement interest (Doc. 47).[3]  Despite this recovery, Publix alleges that Defendants refused to reimburse Publix the medical expense payments that the Plan made for services rendered in connection with the brachial plexus injury allegedly caused by the negligence of medical providers.  According to

---

[2]  Except where otherwise noted, all facts are taken from the Complaint (Doc. 1).

[3]  Defendants originally filed their exhibits as attachments to their response in opposition to Publix's motion (Doc. 25).  Upon review, however, the exhibits contained the full name of the minor child in violation of Rule 5.2, Federal Rule of Civil Procedure.  As a result, the undersigned directed Defendants to refile their exhibits to comply with the requirements of Rule 5.2 (Doc. 46), and Defendants subsequently filed their redacted exhibits (Doc. 47).

Publix, Defendants withheld certain funds from the gross settlement of the Medical Malpractice Action, which currently remain in the Attorney Defendants' trust account.  Indeed, during several hearings in this matter, defense counsel represented and reiterated that the funds remain in a trust account.

Defendants voluntarily dismissed with prejudice the Medical Malpractice Action. Following dismissal, Defendants initiated another action in probate, entitled *In Re: The Qualified Settlement Funds Trust*, in the Ninth Judicial Circuit, in and for Orange County, Florida, Case No. 2015-CP-333521 (the "Probate Action").  In the Probate Action, Defendants seek to reduce the Plan's lien interest.  To that end, on April 12, 2019, Defendants filed an Amended Motion to Allocate Settlement Recovery and Motion to Reduce Collateral Source Lien (the "Allocation Motion") (Doc. 13, Ex. A).   The Allocation Motion indicates that Defendants seek to reduce Publix's $88,846.39 ERISA lien interest to $5,915.00 (Doc. 13, Ex. A).  The Allocation Motion also urges the probate court to apply state-law principles, most of which concern the Medicaid program, to a self-funded ERISA plan.[4]  At the same time they filed the Allocation Motion, Defendants scheduled an evidentiary hearing on the Allocation Motion to occur on May 8, 2019 (Doc. 13, Ex. A).  Notably, Defendants did not name Publix as a party in the Probate Action.

---

[4] The express preemption provision of ERISA, 29 U.S.C. § 1144(a), announcing that the Act's provisions shall supersede any state laws that relate to any covered employee benefit plan, demonstrates that Congress meant to establish employee welfare benefit plan regulation as "exclusively a federal concern." *Alessi v. Raybestos-Manhattan, Inc*., 451 U.S. 504, 523 (1981). Moreover, self-funded employee welfare benefit plans are not subject to state insurance regulation.  *FMC Corp. v. Holliday*, 498 U.S. 52, 61 (1990) ("State laws that directly regulate insurance ... do not reach self-funded employee benefit plans because the plans may not be deemed to be insurance companies, other insurers, or engaged in the business of insurance for purposes of such state laws."); *Blue Cross & Blue Shield of Ala. v. Sanders*, 138 F.3d 1347, 1356 (11th Cir. 1998) (*citing FMC Corp*., 498 U.S. at 61, 65).

Given the pending Probate Action and Publix's perceived inability to protect the Plan's interests in that proceeding, Publix initiated this action under Section 502(a)(3) of ERISA to obtain appropriate equitable relief to enforce the Plan's reimbursement provisions.[5]  More specifically, Publix seeks reimbursement of the settlement funds and equitable relief in the form of a constructive trust or equitable lien on the amounts held or controlled by Defendants as a result of the settlement of the underlying Medical Malpractice Action.  According to Publix, it seeks to impose a constructive trust on a specifically identifiable fund – proceeds Figareau and Paul received on behalf of L.P. when they settled the Medical Malpractice Action.

By the instant motion, Publix seeks entry of a preliminary injunction against Defendants (Doc. 13).  In doing so, Publix contends that ERISA authorizes injunctive relief to prevent a violation of the Plan's rights under the express terms of the Plan and its rights under ERISA, the Anti-Injunction Act does not preclude this Court from enjoining the Probate Action, and Publix satisfied each of the factors required for issuance of a preliminary injunction. Defendants respond in opposition (Doc. 25).  Essentially, Defendants argue that Publix failed to meet its burden for obtaining injunctive relief, Publix failed to demonstrate that it is the real party in interest entitled to enforce its lien claim, and injunctive relief is inappropriate since the underlying settlement involves claims brought by a minor and must therefore be supervised by a Florida court.

Following two hearings on related matters, the undersigned conducted a hearing on the Motion for Preliminary Injunction (the "Injunction Hearing").  During the Injunction Hearing, the parties presented oral argument regarding the merits of injunction relief in this action.  The parties also indicated that Defendants scheduled a hearing on the Allocation Motion to occur on July 2, 2019 in the Probate Action, with Defendants not willing to cancel or postpone the

---

[5]  Plaintiff also seeks declaratory relief pursuant to 28 U.S.C. § 2201.

hearing on the Allocation Motion.  Nothing in the record indicates that Defendants canceled, rescheduled, or postponed the hearing on the Allocation Motion or that Defendants' intention to proceed with the hearing has wavered.

## II.      Standard of Review

The decision to grant or deny a preliminary injunction falls within the discretion of the district court.  *Int'l Cosmetics Exch., Inc. v. Gapardis Health & Beauty, Inc.*, 303 F.3d 1242, 1246 (11th Cir. 2002) (citation omitted); *Carillon Importers, Ltd. v. Frank Pesce Int'l Grp. Ltd.*, 112 F.3d 1125, 1126 (11th Cir. 1997) (citation omitted).  In determining whether a preliminary injunction should issue, the court considers whether the moving party demonstrated (1) a substantial likelihood of success on the merits; (2) irreparable harm to the moving party unless the injunction issues; (3) that the threatened harm to the moving party outweighs the potential harm the proposed injunction may cause the opposing party if the injunction issues; and (4) if issued, the injunction would not disserve or be adverse to the public interest.  *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (citations omitted).  Since a preliminary injunction is an extraordinary and drastic remedy, a court should not issue a preliminary injunction unless the moving party clearly establishes the burden of persuasion as to each of the four prerequisites. *Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr, S.A.,* 320 F.3d 1205, 1210 (11th Cir. 2003).

## III.     Discussion

### A.      Likelihood of Success on the Merits

The first factor in determining whether a preliminary injunction should issue is whether Publix can show a substantial likelihood that it will prevail on the merits of its claims.  Based on the record before the Court, Publix demonstrated a substantial likelihood of success on the merits of its claims.  Namely, Publix asserts a claim for injunctive relief and reimbursement

pursuant to § 502(a)(3), 29 U.S.C. § 1132(a)(3), to enjoin Defendants from dissipating or disposing of the settlement funds pending final determination by this Court that the Plan's terms should be enforced as written.  Under § 502(a)(3), a plan beneficiary, participant, or fiduciary may bring a civil action to enjoin any act or practice which violates any provision of ERISA or the terms of the plan, or to obtain other equitable relief to redress such violations or to enforce any provisions of ERISA or the terms of the plan.  29 U.S.C. § 1132(a)(3).  Publix demonstrated a likelihood of success on its § 502(a)(3) claim for imposition of a constructive trust to accomplish reimbursement of medical expense payments made on behalf of L.P. in the Medical Malpractice Action.

It is well-settled that a plan fiduciary may bring a civil action seeking equitable relief under § 502(a)(3) of ERISA to enforce the terms of its plan and ERISA through the imposition of a constructive trust on a specifically identifiable fund.  *Montanile v. Bd. of Trs. of Nat'l Elevator Indus. Health Benefit Plan*, 136 S. Ct. 651, 658 (2016); *U.S. Airways v. McCutchen*, 133 S. Ct. 1537, 1545 (2013); *Sereboff v. Mid Atlantic Med. Srvs., Inc.*, 547 U.S. 356, 361-63 (2006).  In *Sereboff*, the Supreme Court held that, where an ERISA plan creates an "equitable lien by agreement," a plan fiduciary may seek equitable relief under § 502(a)(3).  547 U.S. at 364–65.  The plan in *Sereboff* included an "Act of Third Parties" provision, which required beneficiaries to reimburse the plan from "[a]ll recoveries from a third party (whether by lawsuit, settlement or otherwise)," and applied when a beneficiary received benefits due to an illness or injury resulting from "the act or omission of another person or party." *Id*. at 359.  In that case, the Sereboffs were involved in an automobile accident and subsequently settled their claims against several third parties.  Their fiduciary of the health plan, Mid Atlantic Medical Services, Inc. ("Mid Atlantic"), filed a § 502(a)(3) action seeking to recover medical expenses incurred by the plan on the Sereboffs' behalf from the settlement fund.  *Id*. at 360.  The Sereboffs' lawyer

had already distributed the settlement proceeds before Mid Atlantic filed suit, but the parties agreed to preserve a portion of the fund in an investment account pending the resolution of the lawsuit. *Id.* The Supreme Court concluded that Mid Atlantic could proceed with its § 502(a)(3) claim, noting that the fund sought by Mid Atlantic was "specifically identifiable" and "within the possession and control of the Sereboffs." *Id*. at 362-63. The Court affirmed that Mid Atlantic properly sought "equitable relief" under § 502(a)(3). *Id*. at 369.

Relying on the Supreme Court's holding in *Sereboff*, the Eleventh Circuit in *Popowski v. Parrot*, 461 F.3d 1367 (11th Cir. 2006), examined the terms of the United Distributors Inc., Employee Health Benefit Plan document to find the presence of a lien by agreement. The Eleventh Circuit recognized the legitimacy of the claim under § 502(a)(3) because the United Distributors Inc., Employee Health Benefit Plan document specified both (i) the particular fund out of which reimbursement must be made and (ii) the specific portion of the fund that was due to be returned to the Plan. *Id*. at 1373. Publix seeks the same equitable relief to obtain the return of specific funds as the Supreme Court authorized in *Sereboff* and the Eleventh Circuit endorsed in *Popowski*. Mainly, as in *Popowski*, the language of the Member Handbook identifies *both* the fund out of which reimbursement must be made (*i.e.*, a settlement effectuated with a third party) *and* the portion due the Plan (*i.e.*, the amount of medical expense benefits paid by the Plan on behalf of the participant) (Doc. 1, Ex. B, at 44-45).[6] As a condition of

---

[6] Publix designated the Member Handbook and the Summary Plan Description as the ERISA written instruments that govern all benefits made available under the Plan (*see* Doc. 1, Ex. B, at 70 ("The Summary Plan Description and this document are the legal documents governing all benefits under the Plan.")). It is not uncommon for employers to use a Summary Plan Description (or other designated instrument such as the Member Handbook) as the documents that control the rights and obligations of the parties. *See e.g., Bd. of Trs. of Nat'l Elevator Indus. Health Benefit Plan v. Montanil*e, 593 F. App'x 903, 911 (11th Cir. 2014) ("We hold that the NEI Summary Plan Description constitutes a written instrument that sets out enforceable 'terms of the plan.' "), *rev'd on other grounds sub nom.*, *Montanile*, 136 S.Ct. 651 (2016); *Rhea v. Alan Ritchey, Inc. Welfare Benefit Plan*, 858 F.3d 340, 345-47 (5th Cir. 2017) ("When the [self-funded] Plan paid Rhea's medical expenses, its [summary plan description ("SPD")] was

receiving benefits under the Plan, participants agree to "immediately reimburse the Plan, out of any recovery made from another party, the amount of medical, prescription or other health care benefits paid for the injury or illness by the Plan . . . and without reduction for attorney's fees, costs, comparative negligence, limits of collectability or responsibility, or otherwise." (Doc. 1, Ex. B, at 44). The Member Handbook unambiguously provides that Publix is entitled "to first and full priority reimbursement out of any recovery to the extent of the Plan's payments" (Doc. 1, Ex. B, at 45).

The Member Handbook also addresses what happens "When a Member Retains an Attorney" (Doc. 1, Ex. B, at 45). The Member Handbook explains that, when an attorney obtains possession of settlement funds that constitute a recovery for an injury for which the Plan has paid benefits on behalf of a participant, "the member's attorney holds the recovery as a constructive trustee for the Plan, because neither the member nor the member's attorney is the rightful owner *of the portion of the recovery* subject to the Plan's lien" (Doc. 1, Ex. B, at 45) (emphasis added). By virtue of the Plan's provisions, Publix's ERISA equitable lien attached as soon as Defendants reached a settlement agreement to resolve the underlying Medical Malpractice Action. *See Sereboff*, 547 U.S. at 366 (stating "the fund over which a lien is asserted need not be in existence when the contract containing the lien provision is executed"); *see also Diamond Crystal Brands, Inc. v. Wallace*, Civil Action No. 1:07-CV-3172-JTC, 2010 WL 1525536, at *7 (N.D. Ga. Feb. 11, 2010) ("Once the parties settled these [tort] claims for $900,000.00, the plan language created an equitable lien for the full amount of the medical bills the Plan paid on behalf of [the participant], which Plaintiff could enforce in equity pursuant to Section 503(a)(3) of ERISA.") (citation omitted).

_____

functioning as both an SPD and a written instrument. That is nothing peculiar: Plan sponsors commonly use a single document to satisfy both requirements, and courts have blessed the practice.").

As in *Sereboff*, equity allows Publix to follow the recovery into Defendants' hands as soon as the settlement fund was identified and to impose on that fund a constructive trust or equitable lien.  547 U.S. at 363–65.  Indeed, courts have imposed constructive trusts to enforce a plan's equitable lien by agreement on settlement proceeds held by a trustee of his wife's special needs trust, *Admin. Comm. of Wal–Mart Stores, Inc. Assocs.' Health & Welfare Plan v. Shank*, 500 F.3d 834 (8th Cir. 2007), and by a conservator acting as a trustee for a trust account, *Admin. Comm. for Wal–Mart Stores, Inc. Assocs.' Health & Welfare Plan v. Horton*, 513 F.3d 1223 (11th Cir. 2008).  Accordingly, the Plan is not limited to pursing its equitable claim against Figareau and Paul. The Plan may also pursue its § 502(a)(3) claim against the Attorney Defendants.  *Horton*, 513 F. 3d at 1229 ("The fact that Ms. Werber holds the funds as a third party does not defeat the Administrative Committee's claim" for an equitable lien or constructive trust under the plan). What matters is not the identity of the defendant but "that the settlement proceeds are still intact, and thus constitute an identifiable *res* that can be restored to its rightful recipient." *Id*.; *see also, e.g., Spinx Company, Inc. v. Goeddel,* Case No. 6:09-cv-1771-Orl-35GJK, 2009 WL 10670808, at *2 (M.D. Fla. Oct. 23, 2009) (restraining the same Attorney Defendants who are named in this action because they "ha[d] the ability, unless restrained, to dissipate the funds . . . and place them beyond the reach of the Court and Plaintiff, thereby preventing the Court from imposing final equitable relief in this matter."); *Siemens Corp. v. Johnson*, CIVIL ACTION FILE NO. 1:15-CV-694-MHC, 2016 WL 10689704 (N.D. Ga. May 19, 2016) (imposing an injunction preventing the participant and her personal injury counsel from disbursing, disposing, or otherwise dissipating annuities believed to be purchased with settlement funds subject to a fiduciary's equitable lien); *Delta Airlines, Inc. v. Pradd*, CIVIL ACTION No. 1:13-cv-00220-SCJ, 2013 WL 12303736, at *3 (N.D. Ga. July 25, 2013) (finding law firm holding plan participant's tort settlement proceeds was a proper defendant

under ERISA, 29 U.S.C. §1132(a)(3), and noting that other courts have concluded that a non-fiduciary to an ERISA plan, such as an attorney holding funds for an ERISA beneficiary, constitutes a proper defendant).

Based on the foregoing, Publix established a likelihood of success on its § 502(a)(3) claim against Defendants.  ERISA explicitly provides an avenue for Publix to maintain a civil action to enforce its rights under the Act, against both the individual and Attorney Defendants. As such, this factor favors entry of a preliminary injunction.

### B.      Irreparable Harm

As a prerequisite to the entry of a preliminary injunction, the party seeking a preliminary injunction must also establish it will suffer irreparable harm unless the injunction issues.  *See Siegel*, 234 F.3d at 1176.  Even though Publix established a substantial likelihood of success on the merits, the absence of a substantial likelihood of irreparable harm to Publix, standing alone, precludes entry of a preliminary injunction.  *Id.* ("Significantly, even if Plaintiffs establish a likelihood of success on the merits, the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper.").  Indeed, irreparable harm is "the sine qua non of injunctive relief."  *Id.* (citations and quotation marks omitted).

In the context of a preliminary injunction, the asserted irreparable harm must be actual and imminent rather than remote or speculative.  *Id.*  Economic losses alone will not justify entry of a preliminary injunction.  *BellSouth Telecomm., Inc. v. MCIMetro Access Transmission Servs., LLC*, 425 F.3d 964, 970 (11th Cir. 2005) (citation omitted).  In this instance, Defendants insist on going forward with the July 2, 2019 hearing in the Probate Action for the stated purpose of reducing Publix's $88,846.39 ERISA lien interest to $5,915.00.  This objective runs directly counter to the participants' duty to cooperate fully with the Plan and refrain from taking any steps "that would interfere with or diminish" Publix's reimbursement rights (s*ee* Doc. 1,

Ex. B, at 44-45).  Furthermore, Defendants' pursuit of an order in the Probate Action in state court to reduce the ERISA-governed lien threatens to frustrate these proceedings and disrupt the orderly resolution herein.  As a result, Publix seeks to enjoin Defendants from dissipating the settlement funds or otherwise proceeding any further in the Probate Action until a resolution on the merits of its claims in this action.

The undersigned recognizes that the practical implication of enjoining Defendants from participating in or otherwise proceeding in the Probate Action is to effectively enjoin the state court.  To the extent that the recommended preliminary injunction could be interpreted as an injunction on the actions of the state court rather than on the actions of Defendants, such relief is warranted under the Anti-Injunction Act, 28 U.S.C. § 2283.  A court of the United States may not grant an injunction to stay proceedings in a State Court *unless* it is: (1) expressly authorized by an Act of Congress; (2) necessary in aid of its jurisdiction; or (3) to protect and effectuate its judgments.  28 U.S.C. § 2283. "These exceptions are designed to ensure the effectiveness and supremacy of federal law."  *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 146 (1988).  In *Senco of Florida, Inc. v. Clark*, 473 F. Supp. 902, 904 (M.D. Fla. 1979), Victoria Clark obtained two state-court judgments for post-divorce alimony and child support in the amounts of roughly $6,000 and $11,000 due from her ex-husband William Clark.  Victoria then served two writs of garnishment on the trustees of the Profit Sharing Plan administered by Senco of Florida, Inc., ("Senco").  *Id*. at 904.  When the trustees of the Profit Sharing Plan sued in federal court to enjoin the state court's enforcement of the writs of garnishment, Victoria moved to dismiss the action as barred by the Anti-Injunction Act.  *Id.* at 904-05.  The district court rejected Victoria's argument while concluding that ERISA "expressly authorized" the federal injunction to prevent the writs of garnishment from interfering with the Profit Sharing Plan's provisions on vesting and distribution of benefits.  *Id.*  The court reasoned that "[t]he

Congressional intent of the ERISA provision on alienation could be frustrated if the federal court were deprived of the power to enjoin proceedings in a state court from garnishing an employee's pension. …  Therefore, the only conclusion is that Congress must have intended ERISA to come within the 'expressly authorized' exception of the Anti-Injunction Act."  *Id*. at 905 (internal citation omitted).

Given the foregoing, it appears that ERISA "expressly authorizes" the injunction of the hearing in the Probate Action.  *See id.*; *see also Gilbert v. Burlington Indus.*, *Inc.*, 765 F. 2d 320, 329 (2d Cir. 1985) (fiduciary with respect to ERISA Plan is expressly authorized under ERISA to seek an injunction of the state proceedings); *General Motors Corp. v. Buha*, 623 F.2d 455, 458-59 (6th Cir. 1980) (injunction against state proceedings expressly authorized by ERISA where state-court action would prevent fiduciary of pension plan from carrying out responsibilities under ERISA).  Namely, the hearing in the Probate Action could frustrate this Court's ability to resolve Publix's equitable claim under ERISA.  Indeed, "[t]he test ... is whether an Act of Congress, clearly creating a federal right or remedy enforceable in a federal court of equity, could be given its intended scope only by the stay of a state court proceeding." *Mitchum v. Foster*, 407 U.S. 225, 238 (1972).  Defendants should not be permitted to invite the entry of a state-court reduction order that could interfere with the Plan's provisions on reimbursement – especially in this instance involving an employee welfare benefit plan – which is an exclusively federal concern.  *Morton v. Nexagen Networks, Inc*., Case No. 8:18-cv-386-T-24MAP, 2018 WL 1899038, at *3 (M.D. Fla. Apr. 20, 2018) (citing *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004)) ("The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans, and ERISA's preemption provisions are intended to ensure that this regulation is an exclusively federal concern.").

Additionally, ERISA grants this Court exclusive jurisdiction over Publix's § 502(a)(3) cause of action.  29 U.S.C. § 1132(e)(1) (providing in pertinent part that: "Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have *exclusive jurisdiction* of civil actions under this subchapter brought by ... a ... fiduciary.") (emphasis added).  State courts lack jurisdiction to entertain the § 502(a)(3) claim that Publix seeks to pursue in this Court.  As such, the court in the Probate Action cannot entertain Publix's claims.

Notwithstanding, Defendants argue that Publix and its third-party claims administrator are simultaneously litigating the same reimbursement claim in state and federal court (Doc. 25).  The unrebutted evidence shows that Publix is the sole entity in pursuit of reimbursement and the real party in interest, however (Doc. 14, Affidavit of Linda Kane ("Kane Aff.")).  As articulated more fully during the Injunction Hearing, neither Publix nor its third-party administrator is a "party" to any state court proceeding (Kane Aff., at 1-3).

To the contrary, Defendants simply mailed to Publix's third-party administrator copies of the Allocation Motion along with an "Amended Notice of Evidentiary Hearing" in the Probate Action (Doc. 13, Ex. A).  These documents illustrate Defendants' unilateral efforts to circumvent this Court's exclusive jurisdiction to hear and resolve Publix's § 502(a)(3) claim for appropriate equitable relief.  The documents fail to establish the proposition that Defendants urge, *i.e.*, that Publix and its third-party administrator are litigating the same claim at the same time in two different courts.  The only claim being "litigated" regarding reimbursement of medical expense payments under the Plan is the § 502(a)(3) claim that forms the basis of this action.

Accordingly, Publix demonstrated that it will suffer irreparable harm if an injunction does not issue.  Specifically, if an injunction does not issue, Defendants will proceed with their

Probate Action and improperly seek to reduce or eliminate Publix's $88,846.39 lien on the settlement funds from the Medical Malpractice Action.  Publix will then be left with no remedy to enforce its ERISA rights or any rights with respect to the settlement funds.  To avoid such result, a preliminary injunction should issue.

<strong>C.      Balance of Harm</strong>

A party seeking a preliminary injunction must further demonstrate that the threatened harm to it outweighs the harm a preliminary injunction may cause to the opposing party.  *Siegel*, 234 F.3d at 1176.  As the Eleventh Circuit cautions, courts should exercise great care before the entire case has been fully and fairly heard to assure that the power of the court to require or deter action does not result in unwarranted harm to the defendant or the public.  *Ala. v. U.S. Army Corps of Engineers*, 424 F.3d 1117, 1128 (11th Cir. 2005).  Here, Defendants will suffer minimal harm, if any, from entry of a preliminary injunction.  Publix does not seek to enjoin the general assets of Figareau or Paul, nor does Publix seek to freeze the general assets of the Attorney Defendants.  Rather, Publix seeks only to enjoin the dissipation of a small portion of the medical malpractice settlement fund – $88,846.39 – to which it claims entitlement.  As noted, during the Injunction Hearing, defense counsel indicated that the Attorney Defendants already isolated those funds and did not intend to dissipate those funds.  Entry of a preliminary injunction continuing to isolate those funds and preventing the dissipation of those funds would therefore maintain the status quo for Defendants and cause them to suffer no harm.

In contrast, Publix will suffer great harm if the $88,846.39 is reduced or otherwise dissipated.  Indeed, Publix may be left with no recourse for its claim for reimbursement or may only receive a small percentage of such reimbursement as a result of proceedings to which it is not even a party.  Any harm posed to the Defendants thus pales in comparison to the adverse consequences that Publix may suffer with the diminution or impairment of its right to

14

reimbursement and to equitable relief under § 502(a)(3).  Accordingly, the balance of harm

weighs in favor of Publix and supports issuance of a preliminary injunction.

### D.     Public Interest

Finally, Publix must demonstrate that the preliminary injunction would not disserve or

be adverse to the public interest.  *Siegel*, 234 F.3d at 1176.  The  issuance  of  a  preliminary

injunction precluding Defendants from using the state court to undermine Publix's rights under

ERISA  would  both  protect  and  enforce  Publix's  interests  under  ERISA.   In  the  face  of

arguments by a participant who claimed it would be unjust to permit ERISA plans to seek full

reimbursement from tort settlement proceeds, the Eleventh Circuit concluded:

> Reimbursement inures to the benefit of all participants and beneficiaries by
> reducing the total cost of the Plan. If O'Hara were relieved of his obligation to
> reimburse Zurich for the medical benefits it paid on his behalf, the cost of those
> benefits would be defrayed by their plan members and beneficiaries in the form
> of higher premium payments. Plan fiduciaries must also ensure that the assets of
> employee health plans are preserved in order to satisfy present and future claims.
> Because maintaining the financial viability of self-funded ERISA plans is often
> unfeasible in the absence of reimbursement and subrogation provisions like the
> one at issue in this case, denying Zurich its right to reimbursement would harm
> other plan members and beneficiaries by reducing the funds available to pay
> those claims.

*Zurich Am. Ins. Co. v. O'Hara*, 604 F.3d 1232, 1237-38 (11th Cir. 2010) (internal citations

omitted).

Furthermore, Publix's ERISA Plan documents speak to the importance of the

reimbursement feature and the nature of the relationship between Publix and its associates.  In

the  Member  Handbook's  Statement  of  Purpose,  the  Plan  informs  participants  that

"[s]ubrogation and reimbursement help protect Plan assets and are vital to the financial stability

of the Plan" (Doc. 1, Ex. B, at 44).  The Summary Plan Description also indicates that the "total

cost of the Plan is paid by both Publix and the associates enrolled in the Plan" and that the "Plan

is a partnership between Publix and its enrolled associates" (Doc. 1, Ex. A at 10 & 19).  Entry

of a preliminary injunction would therefore neither disserve or be adverse to the public interest but rather would prevent harm to Publix and its enrolled associates and their beneficiaries, as well as support the policies underlying ERISA.  Given the foregoing, the public-interest factor weighs in favor of entry of a preliminary injunction.

### E.    Bond

A court may issue a preliminary injunction only if the movant provides security in an amount that the court considers appropriate to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.  Fed. R. Civ. P. 65(c).  Courts maintain discretion to issue a preliminary injunction without requiring the movant to give security, however.  *See BellSouth Telecomms., Inc.*, 425 F.3d at 971. Given the lack of any costs or damages likely sustained by Defendants resulting from the issuance of a preliminary injunction, Publix should not be required to post any bond.

### IV.    Conclusion

As noted, a preliminary injunction is an extraordinary remedy to be used only when a moving party carries its burden as to the four prerequisites.  *See Four Seasons*, 320 F.3d at 1210.  Publix carried that burden in this instance.  Accordingly, it is hereby

RECOMMENDED:

1.    Publix's Motion for Preliminary Injunction (Doc. 13) be GRANTED.

2.    Defendants be enjoined from seeking any relief in the Probate Action that would reduce the Plan's ERISA lien interest.  Such efforts both violate the terms of the Plan documents and undermine this Court's exclusive jurisdiction under 29 U.S.C. § 1132(e)(1) to resolve Publix's ERISA statutory claims.

3.    Defendants be directed to formally cancel the state-court hearing currently scheduled for July 2, 2019.

4.      This preliminary injunction be deemed binding on Defendants in this action and those persons and entities, in active concert or participation with them, that receive actual notice of this preliminary injunction.

5.      No bond be required for issuance of this preliminary injunction.

6.      This preliminary injunction be held in full force and effect until further agreement of the parties or further order of the Court.

7.      In view of the time sensitivity and exigencies created by the currently scheduled hearing of July 2, 2019 in the Probate Action, Defendants shall have seven (7) days from the date of being served with a copy of this Report and Recommendation within which to file written objections.[7]  Publix shall then have seven (7) days to respond to any objections.

IT IS SO REPORTED in Tampa, Florida, this 12th day of June, 2019.

ANTHONY E. PORCELLI
United States Magistrate Judge

## NOTICE TO PARTIES

A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1.

cc:     Hon. James D. Whittemore
        Counsel of Record

---

[7] *See United States v. Barney*, 568 F.2d 134, 136 (9th Cir. 1978), *cert. denied*, 435 U.S. 955, 98 S.Ct. 1586, 55 L.Ed.2d 806 (1978) (holding that trial court did not err in providing parties less than the [then-applicable] full ten-day period to file objections to the magistrate's report and recommendation where exigencies existed, stating that the [then-applicable] "[t]en days is a maximum, not a minimum").