**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**PUBLIX SUPER MARKETS, INC.,**

     **Plaintiff,**

**vs.**                                                                           **Case No: 8:19-cv-545-T-27AEP**

**PATRICIA FIGAREAU and FRANTZ**
**PAUL, individually and on behalf of L.P., a**
**minor, MARIA D. TEJEDOR, and DIEZ-**
**ARGUELLES & TEJEDOR, P.A.,**

     **Defendants.**

_____/

<u>**ORDER**</u>

     **BEFORE THE COURT** are Plaintiff Publix Super Markets, Inc.'s Motion for Summary Judgment (Dkt. 93), Defendants' Opposition (Dkt. 103), Defendants' Motion for Summary Judgment (Dkt. 94), and Publix' Response in Opposition (Dkt. 102). Upon consideration, Publix' motion is **GRANTED.** Defendants' motion is **DENIED**.

*Summary of the Case*

     This is an action by Publix under the Employee Retirement Income Security Act (ERISA) to obtain reimbursement of medical benefits paid by its employee group benefits plan on behalf of L.P., Defendant Paul's dependent. It is undisputed that, consistent with its terms, the plan paid benefits on behalf of L.P. for treatment of an injury she suffered at birth caused by third parties. Paul and Defendant Figareau, represented by Defendants Tejedor and Diez-Arguelles & Tejedor, P.A., settled an underlying state court negligence action against the third parties and recovered settlement proceeds. Under the unambiguous terms of the plan, the settlement triggered an

1

obligation to reimburse the plan for the benefits paid on behalf of L.P. Notwithstanding, Paul and Figareau refused to reimburse the plan, prompting this action. In defending against Publix' claim for reimbursement, Defendants rely on preempted state law in an attempt to relitigate the underlying state court negligence action and limit the plan's right to reimbursement. However, under ERISA and in accordance with the plan's terms, they are obligated to reimburse the plan for the total amount of benefits paid on behalf of L.P. from the settlement proceeds, which are held in trust by Defendants' counsel.

## I.   BACKGROUND AND UNDISPUTED FACTS

Publix is the sponsor and "Plan Administrator" of its self-funded Group Health Benefit Plan (the "Plan"), which provides medical expense benefits to eligible employees and their dependents. (Dkt. 14-1 ¶¶ 3-6; Dkt. 1-3 at p. 67). Under its terms, the Plan "may issue payments for covered medical, prescription and other health care claims incurred by a member for a covered injury or illness caused by 'another party' . . . , but the member agrees to fully reimburse the Plan if and when the member receives payment from another party in connection with such injury or illness."[1] (Dkt. 1-3 at p. 44). Specifically, the Plan includes a provision titled "First Priority Right of Subrogation and/or Reimbursement," which provides:

> Any amounts recovered are subject to subrogation or reimbursement. The Plan is subrogated to all rights the member may have against that other person or another party and is entitled to first and full priority reimbursement out of any recovery to the extent of the Plan's payments. In addition, the Plan shall have a first priority equitable lien against any recovery to the extent of benefits paid and to be payable in the future. The Plan's first priority equitable lien supersedes any right that the member may have to be made whole. In other words, the Plan is entitled to the right of

---

[1] "Another party" is defined as "[a]ny individual or entity . . . who is liable or legally responsible to pay expenses, compensation or damages in connection with a member's injury or illness. Another party shall include the party or parties who caused the member's injury . . . ." (Dkt. 1-3 at p. 53).

first reimbursement out of any recovery the member procures or may be entitled to procure regardless of whether the member has received full compensation for any of his or her damages or expenses, including attorneys' fees or costs and regardless of whether the recovery is designated as payment for medical expenses or otherwise. Additionally, the Plan's right of first reimbursement will not be reduced for any reason, including attorneys' fees, costs, comparative or contributory negligence, limits of collectability or responsibility, characterization of recovery as pain and suffering or otherwise. The Plan's right of first reimbursement shall not be defeated by the common fund doctrine or similar doctrine. . . .

(Id. at p. 45). Further, "recovery" is defined as:

Any and all monies identified, paid or payable to the member through or from another party by way of judgment, award, settlement, covenant, release or otherwise (no matter how those monies may be characterized, designated or allocated) to compensate for any losses caused by, or in connection with, such member's injury or illness. A recovery exists as soon as any fund is identified as compensation for a member from another party.

(Id. at p. 59). These terms, which entitle the Plan to reimbursement "out of any recovery," including a settlement "to compensate for any losses caused by, or in connection with, [a] member's injury" caused by "another party," are clear and unambiguous.

Blue Cross and Blue Shield (BCBS) assists with the Plan's operations, including reimbursement, but does not assume financial responsibility for the payment of medical expenses covered by the Plan. (Dkt. 14-1 ¶¶ 7-8; Dkt. 1-3 at p. 67). BCBS reviews claims to determine whether benefit payments should be restored to the Plan out of the proceeds of settlements with third parties who caused a member's injuries. (Dkt. 93-9 at pp. 2-4 ¶¶ 4-10, 14-15; Dkt. 1-3 at p. 68).

As a Publix employee, Defendant Paul enrolled his and Defendant Figareau's minor child, L.P., in the Plan. (Dkt. 14-1 ¶ 5). The Plan paid $88,846.39 in medical benefits related to an injury L.P. sustained at birth. (Id. ¶ 9). Defendants Tejedor and Diez-Arguelles & Tejedor, P.A.

represented Paul and Figareau in a negligence action against the medical providers and hospital. (Id. ¶¶ 9-10; Dkt. 93-1). In that action, Paul and Figareau alleged that a "shoulder dystocia was encountered" at the time of L.P.'s delivery and that, as a result of the defendants' negligence, she sustained a "significant brachial plexus injury." (Dkt. 93-1 ¶¶ 25-32). Based on these allegations, Paul and Figareau settled the case with the hospital for $95,000, and with the medical providers for $750,000. (Dkt. 93-2 at p. 3; Dkt. 93-4 at pp. 2-3). Both settlement agreements included releases of claims related to the alleged negligence.[2] The state court approved the settlements.

---

[2] The settlement agreement with the hospital provided that "[i]t is understood and agreed that this Settlement Agreement is responsive to the allegations (hereinafter referred to as 'the subject incident') set forth within the Complaint filed in the [negligence action]." (Dkt. 93-2 at p. 2). It provided that Paul and Figareau, as releasors,

> completely releases and forever discharges [the hospital] . . . from any and all past, present and future claims, rights, damages, costs, losses of services, expenses and compensation of any nature whatsoever, including all economic and non-economic damages, whether pursuant to the Federal or State False Claims Act and/or Qui Tam provisions thereof, which the Releasors now have, or which may hereafter accrue or otherwise be acquired, on account of, or in any way growing out of, or which are the subject of, the Incident, including without limitation, any and all known or unknown claims for bodily and personal injuries to the Releasors, wrongful death, or any future claim of Releasors' legal representatives, which have resulted or may result from the alleged acts or omissions of the [hospital], including any third party claims or any nature, whether for contribution, subrogation, indemnity or any other theory. The Settlement Agreement on the part of the Releasors shall be a fully binding and complete settlement between the Releasors and [the hospital], and their respective assigns and successors. The Releasors understand that this Settlement Agreement includes all claims that the Releasors, the heirs of the Releasors, their survivors, legal representatives and assigns, may have either individually or in a representative capacity. Releasors further and completely and forever discharge [the hospital] from any claim for vicarious liability, including but not limited to non-delegable duty, agency, apparent agency, and/or joint venture, as it pertains to any employee, agent, representative or servant of [the hospital], whether based on tort, contract or any other theory of recovery arising under the common law, case law or statute, whether direct, indirect or vicarious, and whether for compensatory or punitive damages.

(Id. at pp. 2-3). Paul and Figareau also "agree[d] that payment of the sum specified herein has been accepted as a complete compromise of matters involving disputed issues of law and fact, and Releasors assume the risk that the facts or law may be otherwise than currently believed." (Id. at p. 5).

In the release in the settlement agreement with the medical providers, Paul and Figareau, as releasors,

> agreed to accept a total sum of [$750,000], . . . which amount has been accepted in full compromise, settlement, and satisfaction of, and as consideration for this Complete Release and Indemnity Agreement, and do hereby remise, release, acquit, relieve, and forever

4

(Dkts. 93-3, 93-5). The Plan was not notified of the settlements until "after the fact." (Dkt. 14-1 ¶ 13).[3]

  To repair and treat the brachial plexus injury, L.P. underwent several surgical procedures and received occupational and vocational therapy, paid for by the Plan. *See, e.g.*, (Dkt. 93-9 at pp. 5-7 ¶¶ 18-24; Dkt. 93-8 at pp. 7-10, 17, 23, 27-28, 33-34). On the Plan's behalf, BCBS identified the benefits claims relating to L.P.'s brachial plexus injury and gathered information about the incident from Figareau. (Dkt. 93-9 at pp. 3-4 ¶¶ 6-13, p. 11). BCBS sent several letters to Tejedor to notify Defendants of the Plan's reimbursement interest in any settlement proceeds and the updated lien amounts, including the $88,846.39 Publix seeks reimbursement of in this action. (Id. at p. 7 ¶¶ 26-27; Dkt. 93-10 at pp. 63-130). The letters included statements of benefits, supported by operative reports and clinical information. (Dkt. 93-9 at p. 7 ¶ 25, pp. 12-131; Dkt. 93-10). Defendants did not dispute that the Plan's payments were related to the brachial plexus injury or

---

discharge [the medical providers] . . . of and from any and all manner of action and actions, suits, sums of money, trespasses, controversies, agreements, damages, losses, injuries, and demands whatsoever, including claims for punitive damages, and claims for attorneys' fees, in law or in equity, whether direct or indirect, and including claims for contribution, indemnity, and subrogation, which Releasors have or may hereafter have, or which their heirs, administrators, executors and subrogors can, shall, or may hereafter have, for all injuries, damages, claims and losses of any kind and character, both known and unknown, arising on account of or in any way relating to the accident, incident, or event that occurred on November 18, 2009 wherein, [L. P.], a minor, allegedly sustained injuries, including all claims which were asserted or could have been asserted in [the negligence action].

(Dkt. 93-4 at p. 2). The settlement agreement further provided that "[i]t is understood and agreed that this settlement is in full compromise of a disputed claim," that "payment of the . . . sum is in compromise, settlement and full satisfaction of all the aforesaid actions," and that "following receipt of settlement funds and the execution of this General Release and Indemnity Agreement, counsel for Releasors will, in the immediate future, file a Notice of Voluntary Dismissal, With Prejudice, of the lawsuit against [the medical providers]." (Id. at pp. 6, 8, 9).

[3] Late notice constitutes a breach of the Plan's "Duties of the Member," which requires a member to "[i]mmediately notify the Plan in writing of any proposed settlement and obtain the Plan's written consent before signing any release or agreeing to any settlement." (Dkt. 1-3 at p. 44). The Plan further requires members to "[i]nclude the benefits paid by the Plan as part of the damages sought against another party." (Id.).

the alleged negligence of the medical providers and hospital. (Dkt. 93-9 at p. 8 ¶ 28). Defendants

did not reimburse the Plan, and Publix filed suit.

***Pending Claims***

In Count I, Publix seeks an equitable lien by agreement on the settlement proceeds as

reimbursement of the Plan's payment. (Dkt. 1 ¶¶ 14-15, 26-28). Specifically, Publix alleges that

Defendants' refusal to reimburse the amount paid by the Plan "violates the Plan" and entitles

Publix to enforce its terms under § 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3). (Id. ¶ 28).[4] Publix

moves for summary judgment, contending that an equitable lien by agreement in the amount of

$88,846.39 should be imposed on the settlement proceeds held in trust by Defendants' counsel.

(Dkt. 93). Defendants acknowledge in their motion for summary judgment that a lien by agreement

is warranted but contend it should be limited to the "reasonable value" of the "surgical treatment"

of L.P. (Dkt. 94 at p. 3). After review, I find Defendants' contention is without merit and Publix

is entitled to an equitable lien by agreement in the full amount paid.

## II.   STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine

factual dispute exists only if a reasonable fact-finder 'could find by a preponderance of the

evidence that the [non-movant] is entitled to a verdict.'" *Kernel Records Oy v. Mosley*, 694 F.3d

1294, 1300 (11th Cir. 2012) (citation omitted). A fact is material if it may affect the outcome of

the suit under the governing law. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

---

[4] Count II, which sought declaratory judgment, was dismissed (Dkt. 56 at pp. 10-11), and Publix' request in Count III to preliminarily enjoin Defendants from seeking allocation of, or disbursing, the settlement proceeds was granted. (Dkt. 52 at p. 7). Defendants' counsel represents that identifiable funds in the amount of $88,846.39 from the settlement proceeds are "being held in an attorney escrow account." (Dkt. 84; Dkt. 103 at p. 14).

The moving party bears the initial burden of showing, by reference to materials on file, that there are no genuine disputes of material fact. *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (citation omitted). If the movant adequately supports its motion, the burden shifts to the nonmoving party to show specific facts that raise a genuine issue for trial. *Dietz v. Smithkline Beecham Corp.*, 598 F.3d 812, 815 (11th Cir. 2010). The evidence presented must be viewed in the light most favorable to the nonmoving party. *Ross v. Jefferson Cty. Dep't of Health*, 701 F.3d 655, 658 (11th Cir. 2012). "Although all justifiable inferences are to be drawn in favor of the nonmoving party," *Baldwin Cty. v. Purcell Corp.*, 971 F.2d 1558, 1563-64 (11th Cir. 1992), "inferences based upon speculation are not reasonable," *Marshall v. City of Cape Coral*, 797 F.2d 1555, 1559 (11th Cir. 1986).

Further, the terms of an ERISA plan "must be enforced as written unless the Plan conflicts with the policies underlying ERISA or application of the common law is 'necessary to effectuate the purposes of ERISA.'" *Zurich Am. Ins. Co. v. O'Hara*, 604 F.3d 1232, 1236-37 (11th Cir. 2010); *see also Johnson Controls, Inc. v. Flaherty*, 408 F. App'x 312, 313 (11th Cir. 2011) ("Where the terms of an ERISA plan are clear and unambiguous . . . [courts] must enforce them as written."); *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 100-01 (2013) (noting that ERISA's "statutory scheme . . . is built around reliance on the face of written plan documents").

## III.   DISCUSSION

In summary, Publix is entitled to an equitable lien by agreement on the settlement proceeds held by Defendants in the full amount paid by the Plan. Contrary to Defendants' contention, the lien should not be limited to the "reasonable value" of L.P.'s surgery.

*Publix' Entitlement to the Lien*

Section 502(a)(3) of ERISA provides that a "civil action may be brought . . . by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). Under this section, a plan's fiduciary may obtain equitable relief to enforce the plan's terms through an equitable lien on identifiable settlement funds in the possession and control of the beneficiary.[5] *See Montanile v. Bd. Of Trs. of Nat'l Elevator Indus. Health Benefit Plan*, 136 S. Ct. 651, 658 (2016); *see also Sereboff v. Mid Atlantic Med. Srvs., Inc.*, 547 U.S. 356 (2006). In this action, Publix seeks to impose a lien on identifiable funds held by Defendants. (Dkt. 1-1 ¶¶ 1, 4-5, 14, 22, 28).

The Summary Plan Description and Member Handbook provide the terms governing the Plan, including the rights and obligations of the parties. (Dkt. 1-3 at p. 70 ("The Summary Plan Description and [Member Handbook] are the legal documents governing all benefits under the Plan.")). Under the Plan, Paul and L.P. agreed to "immediately reimburse the Plan, out of any recovery made from another party, the amount of medical, prescription or other health care benefits

---

[5] As the Eleventh Circuit has explained,

> Whether a remedy is legal or equitable depends on the basis for the plaintiff's claim and the nature of the underlying remedies sought. Not all relief falling under the rubric of restitution is available in equity. [A claim that] seeks nothing other than compensatory *damages*—for example, one that seeks simply to impose personal liability for a contractual obligation to pay money is not equitable for the purposes of § 1132(a)(3).

*Popowski v. Parrott*, 461 F.3d 1367, 1372 (11th Cir. 2006) (internal quotation marks, citations, brackets, and ellipsis omitted). In their motion to dismiss, Defendants relied on *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002), contending that, rather than a claim for equitable relief under § 502(a)(3), Publix brought a "legal claim for monetary damages against a variety of parties." (Dkt. 12 at p. 4). That contention was rejected. (Dkt. 56 at pp. 5-8).

paid for the injury or illness by the Plan up to the amount of the recovery," and the Plan is entitled "to first and full priority reimbursement out of any recovery to the extent of the Plan's payments." (Id. at pp. 44-45). Accordingly, the Plan identifies the fund from which reimbursement must be made ("out of any recovery") and the portion of the fund to be returned to the Plan ("to the extent of the Plan's payments"). *See Popowski*, 461 F.3d at 1373.

It is undisputed that the Plan paid benefits pursuant to its terms and that funds in the amount of $88,846.39 are identifiable and held in an account controlled by Defendants.[6] Because the funds are comprised of proceeds from the settlements between L.P.'s parents and the hospital and medical providers and were obtained as a direct result of the allegations in the state court negligence action that the defendants caused L.P.'s injuries, the funds constitute "recovery made from another party." (Dkt. 1-3 at p. 44). Under the terms of the Plan, therefore, settlement of the negligence action and identification of the proceeds as compensation for the injury created an equitable lien on the proceeds. *See e.g.*, *Diamond Crystal Brands, Inc. v. Wallace*, No. 1:07-CV-3172-JTC, 2010 WL 1525536, at *7 (N.D. Ga. Feb. 11, 2010). As noted, Defendants do not dispute

---

[6] It is of no consequence that the funds are held in an "attorney escrow account." (Dkt. 103 at p. 14). Courts have imposed equitable liens by agreement on settlement proceeds held by trustees. *See, e.g.*, *Admin. Comm. for Wal-Mart Stores, Inc. Assocs.' Health & Welfare Plan v. Horton*, 513 F.3d 1223, 1229 (11th Cir. 2008) ("The fact that [the defendant] holds the funds as a third party does not defeat the [plaintiff's] claim[.]"). Indeed, "the most important consideration is not the identity of the defendant, but rather that the settlement proceeds are still intact, and thus constitute an identifiable *res* that can be restored to its rightful recipient." *Id.*

Further, the Plan provides that a "member's attorney who comes into possession of funds constituting a recovery . . . has an absolute obligation to immediately tender the portion of the recovery subject to the Plan's equitable lien to the Plan under the terms of this provision. As a possessor of a portion of the recovery, the member's attorney holds the recovery as a constructive trustee for the Plan . . . ." (Dkt. 1-3 at p. 45). And the Plan's reimbursement provision "applies with equal force to the parents, trustees, guardians, administrators or other representatives of a minor . . . ." (Id.). The Plan also prohibits a minor participant's representative from allocating recovery "in a way that reduces or minimizes the Plan's claim by arranging for others to receive proceeds of any . . . settlement . . . ." (Id.).

that Publix is entitled to an equitable lien by agreement, but contend the amount of the lien should be limited.

### *Defendants' Contentions to Limit the Lien*

As noted, where an ERISA plan's terms are clear and unambiguous, they must be enforced "as written." *Zurich Am. Ins. Co.*, 604 F.3d at 1236-37; *Johnson Controls, Inc.*, 408 F. App'x at 313. In attempting to relitigate the negligence action and create a factual dispute, Defendants contravene ERISA caselaw and the unambiguous terms of the Plan.

In support of their contention that Publix is entitled to a lien amount less than $88,846.39, Defendants raise two related arguments. First, they reason that because L.P.'s shoulder dystocia would have required treatment in the absence of negligence, they should only be required to reimburse the Plan for the treatment relating to the negligence, which they contend was L.P.'s surgery. (Dkt. 94 at pp. 3-4). Second, they argue they should only be required to reimburse the Plan for the "reasonable value" of the surgery, which they contend is $22,164. (Id.). However, these contentions are contradicted by the record evidence and inconsistent with the terms of the Plan. Accordingly, any factual dispute about the value of the surgery is immaterial.

First, although Defendants attempt to distinguish between the benefits paid as a result of the alleged negligence and the benefits that would have been paid in the absence of negligence, the record evidence establishes that the Plan payments related to the injury L.P. sustained at birth which were caused by "another party," the medical providers and hospital. (Dkt. 93-9 at pp. 5-7 ¶¶ 16-25). And notably, Paul and Figareau made no such distinction in their negligence action or settlement agreements. Specifically, in their complaint they alleged that a "significant brachial plexus injury" was the "direct and proximate" result of the defendants' negligence, identifying

several breaches of the standard of care, including: failure to establish adequate protocols, supervision, and training to provide proper care for a shoulder dystocia complication during child birth; failure to provide appropriate pre-natal care; failure to identify and treat the risk factors for shoulder dystocia; negligently applying excessive traction; failure to accurately estimate the fetal weight; failure to inform the mother of the risks associated with vaginal delivery; failure to recommend and perform a C-section; and failure to implement appropriate measures/maneuvers to relieve a shoulder dystocia. (Dkt. 93-1 ¶¶ 33, 36-37, 67-68, 72-73). Paul and Figareau sought damages to compensate L.P. for her injuries, including medical treatment and therapy expenses incurred to repair her brachial plexus injury. (Id. ¶¶ 39, 46, 54, 65, 70, 75, 82, 84). The settlement agreements broadly released the hospital and medical providers as to all of these claims. (Dkt. 93-2; Dkt. 93-4). It follows that the settlement proceeds were obtained as a direct result of these allegations and constituted compensation for losses caused by, or in connection with, L.P.'s injury. And the undisputed record evidence establishes that the benefits paid on behalf of L.P. by the Plan are encompassed within the damages Paul and Figareau sought for the negligence of the medical providers and hospital.

Defendants' attempt to limit the amount of reimbursement by creating factual issues as to the reasonable value of L.P.'s surgery and whether her therapy and related treatment were proximately caused by the negligence of the medical providers and hospital action is unavailing. Any such issues are immaterial to the right of reimbursement under the terms of the Plan.

In support of their contentions, Defendants point to an expert's opinion that the "negligence in this case was the application of excessive traction which resulted in the requirement of the surgical procedure," not the "medical-provider-defendants' causing the brachial plexus injury."

(Dkt. 103 at p. 22). The expert reasons that even if the medical providers did not apply excessive traction, "brachial plexus would still have occurred and L.P. would have required physical therapy and/or treatment." (Id.).

Notwithstanding, Defendants cite no authority finding a genuine issue of material fact in an ERISA action based on new evidence that contradicts testimony in an underlying action. *See* (Dkt. 93-8 at pp. 9-14, 29; Dkt. 93-6 at pp. 10-11, 13-14, 18-19). By contrast, in *Bd. of Tr. v. Moore*, 800 F.3d 214 (6th Cir. 2015), the court upheld reimbursement to a plan following a recovery where the participant had "alleged in his state court suit that the defendants caused his injuries," "obtained [a] settlement as a result of those allegations," and he "has never disputed that the state court defendants caused his injuries." 800 F.3d at 222-23. The court further noted that even if the participant had disputed that the state court defendants caused his injuries, "the facts in the record—the state court pleadings and the settlement—would lead any fact-finder in *federal* court to conclude that the municipal defendants caused [his] injuries." *Id.*[7]

Similarly, as outlined above, Paul and Figareau alleged in the negligence action that the defendants caused L.P.'s injuries, raising several breaches of the standard of care in addition to the application of excessive traction, obtained settlements as a result of those allegations, and, prior to this action, never questioned whether the defendants caused L.P.'s injuries. In sum, the Plan paid for medical services to treat the injury L.P. sustained at birth, which was caused by another party,

---

[7] *See also Walker v. Wal-Mart Stores, Inc.*, 27 F. Supp. 2d 699, 707 (S.D. Miss.), *aff'd*, 159 F.3d 938 (5th Cir. 1998) ("This court will not now require the Plan to litigate the alleged negligence of [a physician] in order for the Plan to recover. This settlement occurred as a direct result of plaintiff's malpractice suit against [the physician]. Up until the settlement, plaintiff accused [the physician] of being the person responsible for her . . . injuries. In response, [physician] paid plaintiff the $12,500.00 in settlement of all her possible claims against him. The fact that [the physician] avoided a lengthy and expensive civil trial by choosing to settle plaintiff's accusation against him out of court will not now open the door for the plaintiff's claim that the settlement is outside of the scope of the reimbursement provisions."); *see also McIntosh v. Pacific Holding Co.*, 992 F.2d 882, 885 (8th Cir. 1993).

and the settlement proceeds held by Defendants constitute "any recovery made from another party." (Dkt. 1-3 at p. 44).[8] Accordingly, even if Defendants' evidence presents a factual dispute, the dispute is immaterial to the resolution of Publix' ERISA claim.

Second, the undisputed facts demonstrate that Publix is entitled to the full amount paid. Defendants point to no terms in the Plan, or ERISA caselaw, that would limit reimbursement to the "reasonable value" of the medical services.[9] (Dkt. 94 at p. 5). Indeed, rather than authorize payment of the full amount of submitted charges, the Plan is structured to pay an "Allowed Amount." (Dkt. 1-3 at p. 53). For example, although L.P.'s surgeon submitted an $81,900 claim, the Plan paid only $47,396.11. (Dkt. 93-9 at p. 15).

And, contrary to Defendants' assertion that the amount Publix seeks is "purely speculation," the amount is supported by the statements of benefits, operative reports, and clinical information.[10] (Id.). Defendants point to no evidence reflecting that, prior to this action, they

---

[8] Publix contends that, because of their actions in the negligence action, Defendants are "judicially estopped from now asserting that the treatments the Plan covered were unrelated to the injury at birth or rendered at excessive charges." (Dkt. 102 at p. 10). Regardless, the state court record confirms that the Plan's payments resulted from an injury caused by "another party," that the allegations of negligence resulted in the settlements, and the settlement proceeds constituted "recovery" as defined by the Plan.

[9] Defendants refer to this as the doctrine of "double recovery." (Dkt. 103 at pp. 3, 6). In support, they rely on three unrelated state law cases. *Toyota Tsusho Am., Inc v. Crittenden*, 732 So. 2d 472 (Fla. 5th DCA 1999) (addressing a creditor's claim against a debtor); *Albertson's Inc. v. Brady*, 475 So. 2d 986 (Fla. 2d DCA 1985) (personal injury case remanded where medical expenses erroneously admitted); *A.J. v. State*, 677 So. 2d 935 (Fla. 4th DCA 1996) (medical bills properly admitted at criminal restitution hearing). Notwithstanding, ERISA preempts state law, and double recovery does not apply because the Plan has not yet recovered the amount it paid. And while courts have enforced provisions allowing reimbursement in the amount of the "reasonable value" of services, *e.g.*, *Ince v. Aetna Health Mgm't, Inc.*, 173 F.3d 672, 676 (8th Cir. 1999), there is no such qualification in Publix' Plan, and those cases allowed a plan to recover *more* than the amount paid.

[10] As Publix observes, the benefits claims were submitted to the Plan for payment with diagnosis codes associated with a brachial plexus injury and therapy. (Dkt. 93-9 at p. 3 ⁋ 9). Defendants do not refute this evidence. *See Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Haynes*, 397 F. Supp. 3d 1149, 1164 (N.D. Ill. 2019), *aff'd*, 966 F.3d 655 (7th Cir. 2020) (noting that "[s]ubstantiating [a plan fiduciary's] figure is a detailed spreadsheet . . . listing dates of service, service providers, amounts charged by service providers, and the amounts of those charges paid . . . The defendants merely state that [the fiduciary] needs to show more than they have shown to prove that figure. But it is the defendants who failed to rebut the evidence in the record that this number is accurate.").

disputed the medical expenses paid by the Plan as unreasonable, excessive, or unrelated to L.P.'s injury. *See* (Dkt. 93-9 at p. 8 ⁋ 28). And finally, Defendants' contentions are not supported by the language of the Plan, which required Paul and L.P. to "immediately reimburse the Plan . . . the amount . . . paid for the injury," and entitled the Plan "to first and full priority reimbursement out of any recovery to the extent of the Plan's payments." (Dkt. 1-3 at pp. 44-45).[11]

In summary, the undisputed facts demonstrate that, consistent with the terms of the ERISA Plan, Publix is entitled to an equitable lien by agreement in the amount of $88,846.39 and accordingly, summary judgment on Count I in Publix' favor is warranted. Defendants' motion for summary judgment is therefore denied.

---

[11] Defendants similarly contend that Publix' right to subrogation is limited to "the same right that the beneficiary is entitled to," which would have been recovery for "medical bills that were reasonable and related to the underlying medical malpractice claim." (Dkt. 94 at p. 2). This contention is likewise unsupported by the Plan's terms and, as Publix observes, its claim is for reimbursement, not subrogation. (Dkt. 102 at p. 12 n.2). Defendants also raised various affirmative defenses in their answer, but none are supported in their filings. (Dkt. 62; Dkt. 103 at p. 14).

Last, as Publix observes, "[t]he Plan Administrator has the discretionary authority to determine all issues arising under the Plan, including issues of eligibility, Plan interpretation and coverage." (Dkt. 1-2 at p. 52; Dkt. 1-3 at p. 68). To the extent necessary, I find that Publix' interpretation of the Plan's reimbursement provision as it relates to the medical benefit payments at issue is not arbitrary or capricious. *See e.g.*, *Cagle v. Bruner*, 112 F.3d 1510, 1516 (11th Cir. 1997); *see also Sunbeam-Oster Co. Group Benefits Plan v. Whitehurst*, 102 F.3d 1368, 1373 (5th Cir. 1996) ("Federal courts have consistently applied [*Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101 (1989)] deference principles to actions concerning benefit determinations brought not only by participants but also by ERISA plans and, in particular, claims involving ERISA plans' assertions of purported reimbursement and subrogation rights.").

Publix also contends that the Plan's terms grant it "discretion to determine whether medical prescription and other health care claims are related to [an] injury." (Dkt. 93 at p. 12). However, as Defendants point out, the provision relied upon appears to apply when a member has received a recovery in excess of the amount of the Plan's payments and the Plan decides not to provide benefits for future expenses. (Dkt. 1-3 at p. 46; Dkt. 103 at pp. 2-3).

## CONCLUSION

Based on the undisputed facts, Publix' motion for summary judgment is **GRANTED** (Dkt. 93). Defendants' motion for summary judgment is **DENIED** (Dkt. 94). The Clerk is directed to enter judgment in favor of Publix, terminate any pending motions and hearings, and close the file.

**DONE AND ORDERED** this 14th day of September, 2020.

*/s/ James D. Whittemore*

**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to: Counsel of Record